The first case of this morning is case number 4-15-0335, Henry the marriage of Tracy Somers and Patrick Somers, appearing for appellant is attorney Betsy Wurf and for the appellee is attorney Gregory Scott. Good morning. Ms. Wurf, are you ready to proceed? You may. May it please the court, good morning justices, good morning counsel, you're all aware of the facts of this case, so I will just summarize quickly by saying the parties to the underlying case were married in 1982, they separated in 2011 and their divorce went to trial and judgment in 2015. At the time of the divorce, the appellee Tracy was 55 and the appellant, my client Patrick, was 57. The first argument that we presented in our appellant brief is that the $10,500 per month in maintenance that was awarded is excessive due to the large cash award that Tracy received and also the fact that the court did not surmise that Tracy would seek any type of employment in making the award. We've cited standard in the appellant brief. In this case, the maintenance to the petitioner was reduced from $8,300 per month to $4,500 per month on a 2-12-03 motion after the trial. The appellate court upheld this reduction based on the petitioner's actual needs. In this case, Tracy's actual needs were listed at about $7,000 on the financial affidavit that she presented to the trial court. This amount included the amount in shopping, golfing, vacations and travel, her yoga practice, all of the things that she had testified to that were part of her lifestyle during the marriage. The expenses also accounted for some repairs that she testified needed to be made to the home. Those repairs were accounted for in the eventual judgment for dissolution. The trial court reduced the amount of the value of the home, taking those repairs that Tracy's needs are $7,000 or even below that when you subtract the amounts that she had listed for the home repairs. As I said, those were already accounted for in the value of the home when the property disposition was made by the trial court. Ms. Worth, you indicate in your brief or you state in your brief that Ms. Summers has marketable skills. What was the evidence as to the extent of her marketable skills? I believe she testified that she had previously held a job as some sort of administrative director with the church. She has some artistic capabilities. She had a showing of her artwork here in Springfield prior to the trial. She'd also had full-time positions in retail. Certainly in the case law that we've cited, there's a discussion about whether the person is expected to find employment or to actually seek training to have a better chance of employment. Is it a 30-year marriage? Yes. And that applies in this situation? I would think the lower standard of just the court expecting that she would find some type of employment. I don't think that financial independence after 30 years is going to be possible. He's earning $188,000. Was it his last income? I'm sorry? He was earning $188,000? $188,000. I think with his bonuses, his income was $303,000. So is this another one of those, as I like to refer to it, is the Burger King Bahamas dichotomy? He's earning all this money, gets divorced, and goes to the Bahamas, and she goes to work at the Burger King? No, Judge, that's certainly not what we're suggesting. After the 30 years of marriage? That's not what we're suggesting. It is clear from the evidence presented at trial, he does have a lot of expenses that are involved with his job. He travels to Chicago often. He's required to wine and dine clients. I don't think that there was evidence. Well, life's hard that way. It is. It is, Judge. And I hope it's good wine, too. I think from the testimony on the record, it was. But there's a – when this argument is made, especially after marriages of long duration, it always strikes me as there's some smacking here of just arguing that the – I don't remember any instance where it wasn't a woman. Well, by God, let her go and get a job. She's been living off the fat of land long enough. Any job. She has no particular marketable skills. Maybe – what did you say? She had worked as an administrative capacity at her church. That was it? Yes, Judge. Big demand for that. So what did she earn? Maybe $22,000 a year full-time if she worked for some church? I think Patrick is just looking for perhaps some small offset to his obligation. Because that would make a difference in how much he'd have to pay? Is that the argument, or is it just that will show her? No, I think it would make some small difference in the amount that he had to pay. I think the order was ordered. Interestingly, at the time of the trial, the new statute regarding maintenance had just been passed. His base salary was $204,000. With his bonuses, it was $303,000. I think he's right in that range. With Section 504 statutory guidelines addressed, I think that the court would not have been amiss to maybe apply those guidelines in this case. As it was ordered, the award was approximately 41 percent of his gross income, which would exceed statutory guidelines that were laid out in Section 504. Is there evidence in the record as to what she could earn? Other than what she had earned over the past few years, which I think was $1,500, $1,800 per year, she works two to three days a month as a patient for medical students at SIU. So if there isn't any evidence in the record as to what she could earn, what was the trial court to do? That's an interesting question. I think that the trial court could expect that she could earn some small income. I'm not saying that this would relieve him of his responsibility in whole, but I'm saying something more in line with Section 504 guidelines along with some small income. Because by God, she can't be permitted to just sit at home. Even if what she's able to earn really doesn't amount to much, it won't make much difference in ultimately what he has to pay. Correct. Okay. I appreciate your candor. That seems to me to be essentially the position that we see in cases like this. As I said, I don't think that there's any way, based on the case law and the statute, that he would escape his responsibility here. But I do think that application of the 504 guidelines and taking into consideration what she's expressed to her actual needs, including her high lifestyle that she testified to at trial, would be more in line with the law than the amount that was awarded. There didn't seem to be any basis for that amount. Like I said, it did far exceed, almost by one and a half times, the amount that she stated that she would need and also would exceed the guidelines that were laid out in 504. There's a case we've cited, Bratcher, speaking about a party being disadvantaged by the marriage. This was a very long marriage. The parties did have two children. Those children would have been emancipated by 2003. Certainly with the resources that the parties had, Tracy could have chosen at that point to seek education and training for herself. Standard of living is another one of the standards from 504 that we've asked the court to consider. She has testified, she lives in a home in Cantrell, Illinois. Because of his job, Patrick does have a lot of expenses, traveling to Chicago, entertaining clients. It may sound like a nice job, but it is still a job. He testified that it is a stressful job. He testified that he has had health issues due to stress. Also, Tracy had argued that he should be able to pay more maintenance because he is reimbursed for these expenses, but he still maintains a home here in Springfield. So it's not as if all of his living expenses are being covered, just the expenses that he incurs when he travels to Chicago for his business. He is still maintaining a home here, so he does still have living expenses that he pays. So I don't think it's appropriate for the trial court to award maintenance based on his reimbursements for his travel expenses and living expenses from his employer. With regards to the dissipation claim that was found by the trial court, the memorandum of opinion submitted by the trial court refers to Tracy's Exhibit A, which was submitted by her, through her attorney, after the trial. That Exhibit A was a demonstrative exhibit, basically a breakdown of the information that had been submitted at trial. That was submitted without foundation and without the opportunity for objection by Patrick. It has a list of expenses that Patrick had incurred on a credit card. Counsel, before you go further, you're saying that Exhibit A lacked foundation. You're suggesting evidentiary weaknesses. Did you make that claim in your brief? I did not, Judge. Are we to consider that here when it's raised for the first time at oral argument? I think because the standard is the manifest weight of the evidence, that we have to evaluate the evidence. We did make that claim in the appellate brief. The standard is the manifest weight of the evidence. So I think an evaluation of what the evidence was the trial court considered can be considered by the appellate court. Isn't that an objection that needed to have been made at the trial court level in order to preserve it during common review? I don't think that there were any... There was no further hearing at the trial court level. Those closing arguments were submitted, the judgment was rendered, and the appeal was filed. So I think the appellate court is the appropriate place to... When was this document submitted to the trial court? After the trial as a written closing argument. It was not submitted before the written closing argument? It was submitted as an exhibit attached to the written closing argument. That was the first time it appeared in the record? Yes, Judge. Did you object even then, saying, by the way, this document hasn't been presented and we didn't have an opportunity to address it or to ask questions about it? My client did not file a written objection or file a motion to have that presented at the hearing after it was submitted, no. The expenses that are listed on exhibit A, along with some expenses that are listed on exhibit B, were ultimately what the trial court found were the amounts for dissipation. I don't think it's clear from the record whether these amounts were considered. There were credit card charges, there were amounts for reimbursement, bonus checks, and then cash withdrawals. And I don't think it's clear from the record what was presented to the court that there wasn't any overlap with these amounts. For instance, if he made charges and they were reimbursed and he took the reimbursement checks and put them into an account, if any other expenses were counted twice towards the total claim for dissipation. On the issue of dissipation, what struck me, or at least what concerned me as I read through the briefs, was whether or not your client had an opportunity to rebut the challenge being made, the assertion that he dissipated $228,000 in marital funds. Did your client have the opportunity to rebut that challenge as to $228,000? No. Reading through the record, the transcript, he was asked about several expenses. He did give explanations for many of the expenses during the hearing. For instance, he had several $1,000 checks that he had written. He testified that he believed that those were checks that he had written as contributions to the Republican Party. So it's very unclear from the record that he did get a sufficient chance to rebut all the claims of dissipation. At the trial, he was asked, what about this amount, what about this amount? And did all of those amounts add up to $228,000 or more? It's not discernible from the record. I don't believe, I don't think the court based their decision entirely upon these exhibits A and B that were submitted as part of the written closing argument and didn't refer to the exhibits from the record where they were saying this amount is from exhibit number X, whatever, from the trial. So it's very difficult to be sure that some of these amounts have not been counted twice or even three times because it's monies that are either being charged to a card and reimbursed, monies that are going into accounts. It's all laid out in the written closing argument, but that's just argument. It's not actual evidence, and there's nothing in the court's memorandum of opinion that goes to the actual evidence that was submitted. So it's very confusing. And I don't think that my client had a sufficient chance to rebut those. He was asked a multitude of questions regarding these different expenditures. Some he could explain, some he could not. He uses cash for many of his living expenses. The court didn't really evaluate. If he's dissipated $14,000 in cash over the course of a year and his living expenses are $5,000 a month, and that's what he's using to pay most of his living expenses, I think the court should have evaluated what could he have been contributing to his living expenses out of the dissipation instead of just taking basically everything that he's acquired during the separation and adding it up and saying that it's all dissipation. With regards to our final argument, the inequitable distribution of property, the standard of review here is abuse of discretion. We've cited Bankura, which talks about the standard of review with regards to dissipation and the distribution of marital property. As I stated earlier, the standard for the dissipation would be manifest weight of the evidence. With regards to the distribution of marital property, the dissipation claim could have an effect on the distribution, and that needs to be reviewed under the abuse of discretion standard. Because I think that the amount of dissipation found is against the manifest weight of the evidence, that would also affect the ultimate distribution of property in this case. In the court's memorandum of opinion, they've got two columns for what each of the parties is awarded. The amount of the $228,000 was in Patrick's column, and Tracy was awarded basically that same amount in marital property. Even whatever amount was dissipated from the marital estate, based on the trial court's decision basically across the board that things would be divided 50-50 or very, very close there too, Tracy would have only been entitled to 50% of any funds dissipated, whereas Patrick's taken 100% of the dissipation and 100% in marital property to make up for that. So I think the two issues there are intertwined, but they do need to be reviewed by the two different standards. We've argued in our appellant brief that Patrick's contribution to the marriage was not properly considered by the trial court. With this, everything is kind of intertwined, just as the property distribution and dissipation claim are intertwined, his contribution and the maintenance award are intertwined. As I said, I know his job sounds like a lot of fun and has some great benefits, but it's also very stressful and it costs a lot of money. I think the court should consider that with regards to the ultimate property distribution. That is all. Thank you. Okay. Thank you, Ms. Worth. Mr. Dodd. Can I please support the counsel? Let me clear up a few things if I can. First of all, with regard to maintenance and Mr. Summers' income, his wage income was $303,745. In addition to that, he received $48,606 of distributions from the partnership interests that were basically tax-free because the partnership interests come out with the depreciation for tax purposes. So these distributions to him, as I outlined in my brief, are basically tax-free to him that he received in addition to his wages. Plus, his employer pays for a $2,700 a month apartment in Chicago, $300 a month for the parking for his vehicle in Chicago. The employer pays for every expense that he submits for business. So when Ms. Worth says that he has all these business expenses as if they're coming out of his income, they're not. In fact, as we showed in the evidence, he received reimbursement of $36,000 for his housing, to live in a nice place in Chicago, plus $32,000 for meals and living expenses. So this guy, in essence, has almost $400,000 worth of funds, of which $100,000 is free. And the judge gave him an award, or made him pay $126,000, and that leaves him over $180,000 of cash plus his non-cash money. Plus, they give him a car allowance. They give him a cell phone. They give him reduced health insurance. She has to pay $626 a month cover. He pays $76 every two weeks. He also has his own cell phone from these people. So, I mean, it's a very nice job that he has. And as Justice Steigman, you pointed out, this is a 33-year marriage. And contrary to what counsel said, my client only worked pretty much in the beginning of the marriage. She worked for the Universalist Unitarian Church for a while as a staff person in the office. Wasn't, you know, in charge of anything significant. She worked part-time in retail. Her only education was high school education. She had some colleagues that she had during the marriage. But she raised the two boys. That was her job. She testified for long periods of time. Mr. Summers would go to Chicago for his work, which he was required to do, and she was in charge of the home and the family. And really, for the last several years of their marriage prior to their separation, they lived very nicely where she didn't work at all. They lived in either hotels in Chicago, very nice hotels. They lived in an apartment paid for by his company. They traveled extensively. They traveled two, three times a year at minimum. They'd go skiing. They'd go golfing. She'd spend $400 a month in golf on average. She'd be able to go to the spa. She'd be able to go have her facials that she would like. She would have yoga. She'd have her nails done. All of those things were just natural. She had no limits. When she wanted to buy clothes, she bought clothes. She would go to Neiman. She would go to Nordstrom's. She wouldn't go to Sears. She would go to anywhere that she wanted to buy clothes. She could give gifts without limitations. That was the lifestyle that they had. Even at the $10,500 level, she's not going to get to that level of lifestyle. But she's going to have it a lot easier than what she would be able to do on her $2,500. As far as her ability to go out and make money, the case law that I cited to the court and that you all know, is she's not going to be able to get close to enough money. The disparity in income is just too great. She's not going to be able to afford this type of lifestyle without maintenance. The amount of maintenance, I don't think, is out of line, given his type of earnings, his type of ability to pay, her needs. And counsel says she says an affidavit only has $7,000 of needs. It's a little bit over $7,000. But she has to pay tax for $10,500. What about this point that was made about this Exhibit A that was presented only as an attachment to your closing argument? It was attached in the closing argument, but it ties into all of the evidence that was produced at the hearing. So just a summary of what was presented? It's a summary of, at the hearing, there were two exhibits, and there are Exhibits 33 through 35, maybe three exhibits, that are all of his charge records. And if you look through this rather exhaustive record, we specifically went down item by item, including his trips to Charleston with his friend, to sandals with his friend, buying his friend golfing equipment, taking her to the Cubs game, buying her gifts, buying her jewelry, taking her out for New Year's Eve to the Ritz-Carlton, expensive dinners. All of these things that are listed on Exhibit A are off of his charge cards and were put into evidence laboriously. And beyond that, was the assertion made during the course of the trial that your client was asserting dissipation for amounts equaling or in excess of $228,000? The figure of $228,000 was not put into an argument until the actual written argument. I understand, but as to each of the elements that you're talking about or each of the charges, was an assertion made that that amount was dissipated? Yes, that was the method of trying the case. So this was demonstrative evidence, essentially? Exhibit A is, yes. And if you look at Exhibit A, the summary page of Exhibit A, it has an itemization of the $187,000 in charges. And we excluded all of his personal expenses, normal living expenses, from those charges. And of the remaining $128,000, counsel talks about doubling up and that type of thing, we removed the cash that he couldn't explain from his partnership fees that he couldn't explain where he put the money. This man used cash. This man admitted to using cash. He couldn't itemize where his cash went. And as we went down each of these, in each of these claims of dissipation, there was a director's fee that he couldn't explain of $28,000. There was ATM withdrawals of $14,365. There was partnership income that he couldn't explain. There was checks that he wrote out for cash, $14,600 on the joint account. And we just said, we went through this laboriously trial. Where did you go with that money? What did you do with it? He had the vague answers. I don't know. Used it for living expenses. Used it here or there. We found out the date. Actually, maybe it was during the trial. He bought a new car a couple days before the trial and traded in a car that he bought right after separation and took some cash that he had on his dresser and paid off the car. So he had willingly admitted that he operates in cash. Mr. Scott, never having practiced divorce law, I'm curious about something. How specific, how direct must the claim of dissipation be at the time of trial in order for the trial court to be able to enter into order such as the trial courts here, indicating that there would be an offset but there was dissipation? Does the party asserting dissipation have to make some sort of overt statement that we're claiming dissipation? Or is it simply a matter of if the question and answer suggests it was dissipation, that the trial court may make that finding? Actually, in this case, it's different than what the law is now. The law now is that you must file a certificate of dissipation and a claim of dissipation itemizing the dissipation 60 days prior or 30 days after the completion of discovery. This case was filed in 2011. That did not take effect until cases filed in 2013 and thereafter. We did make claims of dissipation throughout the pre-trial process. We had notified the court that that was our position. The court was aware of that. His then counsel was aware of that. So when we tried the case, there was the added difficulty with this case in that the only way records were able to be produced for evidentiary purposes was through subpoenas, which were still being received a couple of weeks before the trial because no voluntary compliance with discovery had been forthcoming from Mr. Summers. That's the difficulty from the practitioner's standpoint. The court was aware that that claim was out there early on. We would normally file, in today's world, we would file a certificate of dissipation itemizing all of these, like these credit cards. We got most of those two weeks before trial. So that was just my difficulty. There was no contrary evidence produced by Mr. Summers. I cited to the record in my brief, he just said, yeah, we had a lavish lifestyle. Yeah, I did a lot in cash. Yeah, I spent it for food. I spent it for dates with my girlfriend. I spent it for this. I spent it for that. He certainly had the opportunity. And one of the things that we did was provide him with an opportunity to specifically say, what did you do with the money? And we went through each of these at trial. And he didn't say anything. As far as Exhibit A is concerned, we actually deducted $40,000, almost $41,000 of unexplained cash from his charges. I mean, I could have made a claim for $128,000 of charges, which were girlfriend travel charges, Armani coats, all the things that he bought that I've listed in my brief. But we gave him the benefit of taking almost $41,000 of unexplained cash off because we were claiming that as a separate area of dissipation and we didn't want to double up. We gave him that benefit of the doubt. All of his personal expenses, we just said, that's fine. We're not going to claim those for dissipation, although there's some case law that would give us authority to do that. I don't have a comment as to whether I find that acceptable or not. But at any rate, we really tried to put a fair approach to what he had been doing. And he just lived with reckless abandon, felt the court just had to accept that because he said, I spent the money, or I don't know how I spent the money. And what the court did was proper. As far as the distribution is concerned, the distribution difference between my client and Mr. Summers is $1,000, $1,010 to be exact. So this judge put a lot of effort at this. The judge lived with this case for almost five years by the time we got everything together and got it to the court. And given what he had in front of him and the very extensive evidence, I think his ruling should be affirmed. Does Judge Maher now handle most of the divorce cases in Salem County? I think in his opinion he does, but he handles a considerable amount of them now, Your Honor. Yes, Judge Davis does as well. And so now does Judge Asher. But they have a system. They try to make them somewhat equal. But that's the system. I think Judge Parent is the extra judge if they need that. But we would ask the court to affirm the decision. If the court has no other questions. I don't see any. Thank you. Thank you. Ms. Work, rebuttal argument? Just briefly. I just want to briefly touch on the income where Mr. Scott argued that my client has income from his partnership interest. That income was divided in the judgment that Tracy would get half of that income. So if we're going to award her half of that income as partnership interest, I don't think we can also add it to his income in a determination of maintenance. What I'd most like to touch on before we're through here today would be, again, with regards to the dissipation claim. The court inquired whether or not there were specific assertions of dissipation claimed. I disagree with Mr. Scott that they were specific enough for my client to rebut them. If Exhibit A that the court referred to in its random opinion, there were ATM withdrawals. Those were not walked through each one on this date, this amount, what did you do with that money. There were charges for airfare, again, that were not specifically addressed. They're just kind of taking it as a big lump. Patrick testified at the trial that a lot of the airfare was either for work, it was for trips with his children, which I don't believe would have been dissipation. But there's not specific testimony in the record addressing each charge. They've just taken all the charges for airfare. And if it wasn't reimbursed by the company, then it's dissipation. But certainly many of those charges were not dissipation. Trips with his own children, trips that he had to take for work that weren't reimbursed. He testified during the trial. He's only reimbursed if he's proactive and submits those receipts. So there were travel expenses that were unreimbursed that have now been charged as dissipation. It was a series of questions, but it did not address each specific amount. And I think that that needs to be in the record for the court to find each specific amount is dissipation. I don't think we can just lump them all together and say, we spent money on airfare, so that's dissipation. The court's finding for the amount of dissipation is all based on argument that was submitted after the trial. And it's not evidence, it's argument. I don't know if they're claiming that the car, that the cash spent on the car was dissipation. Certainly, I believe he testified that the car was paid for in cash. That's something that he needs to perform his job. His case went on for four years, so the fact that he bought a new car between the time of filing and the trial, I don't think seems that wild. I think Mr. Scott admitted that there was a lack of specificity prior to the trial or during the trial because of the lack of time to prepare. I understand you didn't prepare the brief in this case. That's correct. But looking at the brief, the manner in which the claim of dissipation is addressed, it's not that Mr. Scott's client failed to sufficiently identify the charge of dissipation. It was that your client presented sufficient proof of why or how he spent that money. It doesn't seem like this deficiency that you're suggesting here, an oral argument, was raised in the brief. I think those two issues are tied together. He testified that, yes, I use my charge card to travel. I do that for work. They submitted those specific expenses in their exhibit A that the court faced its opinion on. So, again, it is our position that because it's a manifest way to the evidence standard of review, we do have to look closely at the evidence that was presented to determine whether or not the amount that was ultimately arrived at was in line with the evidence. Thank you. All right. Thank you. Thank you both. The case will be taken under advisement and a written decision, shall we?